**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-23-08059-001-PCT-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Matthew Tyler Carpenter, | |
| Defendant. | |

Sentencing in this matter is scheduled for July 28, 2025. Defendant has filed an objection to the presentence report ("PSR"), with which the government concurs, but the Probation Office recommends overruling the objection. The purpose of this order is to provide some additional observations regarding the disputed issue, which the parties should be prepared to address at sentencing.

As background, Defendant was indicted on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (Doc. 1.) The indictment alleges that the offense took place on September 17, 2019 and involved "a Remington Model 870 12-gauge shotgun bearing serial number RS70468Z." (*Id.*) Defendant has now pleaded guilty to that offense. (Doc. 30.) In the factual basis of his plea agreement, Defendant admits that he "personally controlled and handled" the aforementioned Remington shotgun on September 17, 2019. (*Id.* at 9.)

The applicable guideline for a violation of 18 U.S.C. § 922(g)(1) is USSG § 2K2.1. Under USSG § 2K2.1(a)(6), the default base offense level for this offense is 14. However,

under the "Cross Reference" provision of USSG § 2K2.1(c)(1)(A), "[i]f the defendant used or possessed any firearm . . . cited in the offense of conviction in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm . . . cited in the offense of conviction with knowledge or intent that it would be used or possessed in connection with another offense, apply . . . §2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above."

Although the factual basis of the plea agreement is quite narrow and only admits to the facts necessary to support the felon-in-possession charge, the "Offense Conduct" portion of the PSR provides many more background details surrounding the offense. The PSR explains that on September 17, 2019, Defendant and another man, L.B., entered the hogan of a third man, E.D.D. (Doc. 53 ¶ 10.) This was a "home invasion." (*Id.* ¶¶ 6, 13, 164.)[1] Either Defendant or L.B. was carrying a box containing a shotgun as they entered the hogan. (*Id.* ¶¶ 10, 17, 18.) It is undisputed that, during a subsequent melee, E.D.D. was shot in the abdomen at close range with the shotgun, resulting in significant injuries that eventually required hospitalization. (*Id.* ¶¶ 10, 11, 18.) It is also undisputed that E.D.D. pulled out his own handgun and fatally shot L.B. (*Id.* ¶¶ 7, 10, 12.) However, the identity of the person who shot E.D.D. with the shotgun is disputed—although E.D.D. has repeatedly identified Defendant as the shooter (*id.* ¶¶ 10, 18, 23), E.D.D. has also provided conflicting accounts of the encounter. As a result, the government has not charged Defendant with any crimes other than the felon-in-possession charge and Defendant "does not admit that he shot" E.D.D. and contends that "[i]t is just as likely that the other person

---

[1] *See also id.* ¶ 13 ("E.D.D. said that 'they ran in on him'"); *id.* ("On the day of the shooting, [Stevens] witnessed a vehicle pull up to the hogan where E.D.D. and her son reside. A backseat passenger (Carpenter) exited the vehicle and approached her asking where her son was. Stevens told Carpenter that she did not know where her son was, asked him to leave, and indicated that she did not want any trouble. Afterward, she went into her residence. A few minutes later she heard three shots."); *id.* ¶ 17 ("Domingues said she was picked up in Chinle by Carpenter and L.B. They drove to E.D.D.'s hogan on September 17, 2019, and she was instructed to wait outside while they took care of something. They took a 3-foot-long box inside the hogan. Carpenter went inside of the hogan first. Domingues heard yelling inside the hogan after L.B. entered.").

in the hogan, the deceased L.B., shot" E.D.D.  (Doc. 54 at 2.)

Following the shootings, Defendant "exit[ed] the hogan and drop[ped] a shotgun outside before he ran into the woods." (Doc. 53 ¶ 8.) That shotgun—the same Remington shotgun that forms the basis for the indictment and Defendant's guilty plea—was later recovered by law enforcement and sent to an FBI laboratory for testing. (*Id.* ¶¶ 9, 21.) DNA from two different men was recovered from the surface of the shotgun, but it is unlikely that Defendant was one of the contributors. (*Id.* ¶ 21.)

Based on these facts, the PSR concludes that the cross reference under USSG § 2K2.1(c) should apply and that Defendant's base offense level should be 24, rather than 14. The PSR provides the following explanation for this determination:

> Pursuant to the cross reference at USSG §2K2.1(c)(1)(A), USSG §2X1.1 is to be used because the defendant possessed the firearm in the count of conviction in connection with another offense, and the other offense results in a higher offense level.  As the substantive offense is aggravated assault, the base offense level and all adjustments from USSG §2A2.2 are used to establish the base offense level.  Pursuant to the cross reference at §2K2.1(c)(1)(A), 2A2.2 is used to determine the offense level because it results in a higher offense level and the firearm is cited in the offense of conviction.  The base offense level is 14.  USSG §§2A2.2(a) and 2K2.1(c)(1)(A).  Five levels were added because a firearm was discharged. Specifically, the defendant shot E.D.D. with a Remington Model 840. USSG §2A2.2(b)(2)(A).  Seven levels could have been added because the victim sustained permanent or life-threatening bodily injury.  However, the cumulative adjustments from application of subdivisions (2) and (3) shall not exceed 10; therefore, five levels were added.  Specifically, the victim sustained multiple bowel perforations, a significant tissue loss in his abdomen, and fractured ribs with a loss of portions of his ribs.  During surgery, portions of his small intestine were removed, his colon was resected, and his remaining bowel was joined after his sigmoid colon was removed during a colectomy. USSG §2A2.2(b)(3)(C).

(*Id.* ¶ 26.)

Unfortunately, the plea agreement in this case contains a Rule 11(c)(1)(C) stipulation "that U.S.S.G. § 2K2.1(c) (Cross Reference) shall not apply." (Doc. 30 at 2.) Thus, if the Court were to accept the PSR, it would need to reject the plea agreement (which

- 3 -

1  also contains a stipulated sentencing cap of 24 months, far below the PSR's calculated
2  Guidelines range of 77-96 months) and give Defendant an opportunity to withdraw his
3  guilty plea.

4  Both parties object to the PSR's determination that the § 2K2.1(c) cross reference
5  should apply.  According to Defendant, the cross reference is inapplicable because there is
6  insufficient evidence to establish that he was the person who shot E.D.D. with the shotgun:
7  "The PSR states that Matthew Carpenter shot E.D.D.  This is not conclusive from the police
8  reports.  The police reports and interviews have differing statements from victim E.D.D.
9  and other witnesses.  There is not scientific or physical evidence that supports a conclusion
10 that Mr. Carpenter shot E.D.D.  Mr. Carpenter is not charged with aggravated assault or
11 any other crime related to shooting E.D.D.  Defense submits that there is not evidence to
12 state that Mr. Carpenter shot E.D.D. in order to use that against him in guideline
13 calculations, even at a lower burden of proof."  (Doc. 46 at 1-2.)[2]

14 Similarly, the government argues that "Carpenter has not been charged with any
15 other offenses related to this incident.  The only people who know what happened inside
16 the hogan are Carpenter and E.D.D., as L.B. is deceased.  E.D.D. made statements to police
17 (which are correctly summarized in the PSR), but Carpenter disputes his accounts.
18 Resolving this issue would require the Court to make credibility determinations and factual
19 findings based on incomplete and possibly inconsistent information.  Upon review of all
20 the evidence and the circumstances of this case, the United States declines to pursue
21 application of the cross-reference."  (Doc. 49 at 2.)

22 In the addendum to the PSR, the Probation Officer recommends overruling this
23 objection because "[a] probation officer is an independent investigator and not bound by

---

[2] In his sentencing memo, Defendant adds: "[Defendant] does not admit that he shot E.D.  He asks the Court to consider some additional information.  The PSR states that E.D. identified Carpenter in a line up as the person who shot him.  It omits that E.D. also stated that he could not identify anyone in that line up.  In the course of investigating this matter, E.D. changes his story and does not provide a reliable narrative.  E.D. has significant criminal history . . . .  [Defendant] was not charged with shooting, assault, or any other such charge.  It is just as likely that the other person in the hogan, the deceased L.B., shot E.D.  There does not exist a preponderance of evidence that Matthew shot E.D. and that is not relevant conduct to be considered in this sentencing."  (Doc. 54 at 2.)

the stipulations contained in the plea agreement.  The probation officer's objective analysis of the available information indicates that E.D.D. was shot twice by a shotgun.  E.D.D. reported that [Defendant] was the individual who shot him, and the victim also positively identified the defendant in a photographic lineup.  Additionally, when [Defendant] fled the scene, witnesses saw him drop a shotgun outside the victim's residence.  Notwithstanding the results of DNA testing, the shotgun to which the defendant has pleaded guilty to possessing was found outside the hogan.  A preponderance of the evidence indicates that the defendant did shoot E.D.D.; therefore, the cross-reference is applicable, and the offense level computation was not revised."  (Doc. 53 at 45-46.)

Having reviewed the parties' submissions and the Probation Officer's response, the Court is tentatively inclined to overrule the objection.  As an initial matter, the cross reference may apply even though Defendant was only indicted on the felon-in-possession count and has not been charged with any other crimes.  *United States v. Humphries*, 961 F.2d 1421, 1422 (9th Cir. 1992) (rejecting defendant's argument that "the term 'another offense' in the phrase 'in connection with commission or attempted commission of another offense' means another offense of which the defendant was convicted, rather than merely conduct that would constitute such an offense" and affirming application of cross reference even though the defendant "was not convicted of aggravated assault") (citation omitted).

On the merits, the parties place heavy emphasis on the factual dispute over whether Defendant or L.B. was the person who ultimately shot E.D.D. with the shotgun.[3]  However, it is not clear to the Court that the applicability of cross reference turns on this issue.  As noted, § 2K2.1(c)(1) applies "[i]f the defendant used or possessed any firearm . . . cited in the offense of conviction in connection with the commission or attempted commission of

---

[3]  To the extent Defendant seeks to invoke E.D.D.'s criminal history in the course of raising this factual dispute, that approach is misplaced.  *United States v. Canady*, 578 F.3d 665, 673 (7th Cir. 2009) (affirming application of cross reference in felon-in-possession case, where the defendant was accused of using the illegally possessed firearm to shoot Vance during a home invasion and argued that "[a]lthough Vance identified [defendant] as the shooter, . . . Vance's statements to the police were unreliable," and emphasizing in a parenthetical that a "sentencing judge [is] not precluded from relying on testimony from witnesses who had impure motives, criminal histories, and a record of telling lies") (citation omitted).

another offense, or possessed or transferred a firearm . . . cited in the offense of conviction with knowledge or intent that it would be used or possessed in connection with another offense." Here, the "another offense" identified in the PSR is aggravated assault. Thus, so long as Defendant possessed the shotgun "in connection with the commission or attempted commission" of the aggravated assault of E.D.D. or "with knowledge or intent that it would be used or possessed in connection with" the aggravated assault of E.D.D., the cross reference applies. *See also* USSG §2K2.1, application note 14(A) ("Subsections (b)(6)(B) and (c)(1) apply if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense or another offense, respectively.").

Those standards appear to be satisfied here. Defendant and L.B. jointly entered E.D.D.'s hogan with bad intentions, as part of a home invasion, and Defendant possessed the shotgun at least at some point during the encounter, as either Defendant or L.B. was carrying a box containing the shotgun when they entered the hogan, Defendant was seen dropping the shotgun in E.D.D.'s yard immediately after the shooting, and Defendant admits in his plea agreement that he "personally controlled and handled" the shotgun on the date of the shooting. In other words, even assuming that L.B. was the shooter, Defendant still possessed the shotgun "in connection with the commission of" L.B.'s aggravated assault of E.D.D. *See, e.g., United States v. Dalmau*, 2017 WL 3261719, \*6 (W.D.N.Y. 2017) ("[T]he person who shot Ortiz-Maldonado was one of two people: the Defendant or Lorenzi. The Defendant was therefore either the driver of the Yukon, in which case he would almost certainly had to have seen, or been aware of, the murder so that he could quickly drive away; or he was, in fact, the shooter. Thus, a preponderance of the evidence shows that the Defendant knew that the gun found in the Yukon—a gun he admitted possessing—was used to murder Ortiz-Maldonado. . . . [T]he narrow question before the Court is simply whether the § 2K2.1(c)(1)'s cross-reference applies in this case. Answering that question does not require the Court to find that the Defendant murdered Ortiz-Maldonado. Rather, to answer that question it is sufficient to find only that Ortiz-Maldonado was murdered and that the Defendant 'possessed' a firearm 'in connection

with'—that is, a firearm that 'facilitated'—Ortiz-Maldonado's murder. The Court therefore need not make any finding as to whether the Defendant, rather than Lorenzi, murdered Ortiz-Maldonado on January 5, 2014."); *United States v. Jackson*, 662 F. App'x 310, 318 (5th Cir. 2016) (affirming application of cross reference where "[t]he gun seen in the video is the one at issue in the felon in possession count" and "[t]he shooting takes place mere seconds after [the defendant] hands the gun to Dokes and walks off screen").

At sentencing, the parties should be prepared to address these observations. Additionally, if the Court overrules the objection, which will necessarily require the Court to reject the plea agreement, the Court will then follow the procedure set forth in Rule 11(c)(5) of the Federal Rules of Criminal Procedure, by personally advising Defendant that the Court is not required to follow the plea agreement, by giving Defendant the opportunity to withdraw his guilty plea, and by personally advising Defendant that if the plea is not withdrawn, the Court may dispose of the case less favorably toward Defendant than the plea agreement contemplated.

Dated this 25th day of July, 2025.

Dominic W. Lanza
United States District Judge